# EXHIBIT A

Anthony J. LaRocca
202 429 8119
alarocca@steptoe.com

1330 Connecticut Avenue, NW
Washington, DC 20036-1795
202 429 3000 main
www.steptoe.com

ENTERED
Office of Proceedings
December 23, 2021
Part of
Public Record



December 23, 2021                                                          CSXT/PAR-45

**VIA E-FILING**

Cynthia T. Brown
Chief, Section of Administration
Surface Transportation Board
Office of Proceedings
395 E Street, SW
Washington, DC 20423

Re:    **STB Docket No. FD 36472, CSX Corporation and CSX Transportation, Inc., et al.—
Control and Merger—Pan Am Systems, Inc., Pan Am Railways, Inc., Boston and
Maine Corporation, Maine Central Railroad Company, Northern Railroad, Pan Am
Southern LLC, Portland Terminal Company, Springfield Terminal Railway
Company, Stony Brook Railroad Company, and Vermont & Massachusetts
Railroad Company**

Dear Ms. Brown:

CSX[1] is pleased to report to the Board that CSX has reached the enclosed settlement
agreement with the Village of Voorheesville, NY ("Voorheesville") regarding potential issues
between CSX and Voorheesville arising out of CSX's application in the above-referenced
proceeding.

                                        Respectfully submitted,


                                        /s/ Anthony J. LaRocca

                                        Anthony J. LaRocca
                                        Peter W. Denton
                                        Sally Mordi
                                        *Attorneys for CSX Corporation and
                                        CSX Transportation, Inc.*

---

[1] The acronyms and defined terms used in this letter are the same as those used in the Revised Application filed in
the above-captioned proceeding.

Cynthia T. Brown
December 23, 2021
Page 2


Enclosures

cc:    Louis E. Gitomer
       All parties of record



CSX Transportation
500 Water Street, J275
Jacksonville, FL 32202

December 16, 2021

Richard Straut
Mayor, Village of Voorheesville
29 Voorheesville Ave.
Voorheesville, NY 12186
mayor@villageofvoorheesville.com

Re:    CSX Corporation and CSX Transportation, Inc., et al. –
       Control and Merger – Pan Am Systems, Inc., et al.
       <u>Surface Transportation Board Docket No. FD 36472</u>

Dear Mayor Straut:

    CSX Transportation, Inc. ("CSXT") and Norfolk Southern ("NSR") enter into this letter agreement with the Village of Voorheesville (the "Village") to resolve potential issues between the parties arising out of CSXT's amended application currently pending before the Surface Transportation Board ("STB") in the above-cited matter to acquire Pan Am Systems, Inc. and its various railroad subsidiaries, along with a directly related notice of exemption filed by NSR in a sub-docket to operate via trackage rights over CSXT's Selkirk Subdivision between the Village and Worcester, MA (together with CSXT's application, the "Proposed Transaction"). The Proposed Transaction, when consummated, would result in the rehabilitation of an existing rail connection between CSXT and NSR within the Village (the "NSR Connection"). In settlement of potential issues related to the Proposed Transaction, the parties agree as follows:

1.  The following commitments are not contingent upon consummation of the Proposed Transaction:

    a.  CSXT represents and warrants that it will continue to cooperate and assist the Village and Albany County (the "County") in the ongoing design and implementation of the County's proposed Quiet Zone for the Voorheesville Avenue and South Main Street at-grade crossings over CSXT (the "CSXT Crossings").

    b.  CSXT and NSR both agree to advance the survey and design work for the Quiet Zone project through the necessary survey and design work NSR will perform in connection with the Proposed Transaction, the NSR Connection and the existing at-grade crossing over NSR at South Main Street (the "NSR Crossing"). In particular,

        i.  NSR will, in connection with its design of the NSR Connection and Crossing, perform the topographical survey that the Village/County would otherwise need to perform for the Quiet Zone project.



upgrades to complete the Quiet Zone project at the CSXT Crossings and NSR Crossing.

    i. With respect to the CSXT Crossings:

        1. Subject to the modifications and funding conditions referenced above, CSXT represents and warrants that it will perform the necessary improvements within CSX right-of-way to allow for completion of the Quiet Zone project at the CSXT Crossings, including installation of active grade crossing warning devices sufficient to obtain FRA approval for a Quiet Zone, at a cost equal to the order of magnitude cost estimate transmitted to the Village via letter dated August 10, 2016.

    ii. With respect to the NSR Connection and NSR Crossing:

        1. It is anticipated that the final design of the NSR Connection will require (subject to review and approval by NYSDOT and/or FRA) the installation of standard grade crossing warning devices and improvements to the highway alignment and profile at the NSR Crossing. Design of this work and installation of the standard grade crossing warning devices at the NSR Crossing will be at NSR expense, and will be configured so as not to preclude the establishment of a Quiet Zone at this location.

        2. NSR agrees to construct the roadway changes needed to accommodate any NSR Connection and NSR Crossing, at NSR's expense, and CSXT will perform design review of the roadway design at no expense to the Village/County.

        3. Additionally, NSR agrees to absorb up to $125,000 of its project costs for work not described above but specifically related to implementation of the Quiet Zone project at the NSR crossing or for other railroad-related work at other NSR at-grade crossings within the Village.

c. The Village will work with the County as needed to progress the Quiet Zone project toward completion. The Village understands that, in the event the County's final project design requires major roadway modifications, including pedestrian walkways (which in turn could impact CSXT and NSR's signal design), it will be responsible for obtaining any additional funding that may be required to complete the Quiet Zone project at either the CSXT Crossings or the NSR Crossings (or both, should the combined project qualify for one Quiet Zone), beyond the CSXT and NSR contributions described in 2(b) above.



CSX Transportation
500 Water Street, J275
Jacksonville, FL 32202

d. The parties will work together in the design and construction of any necessary improvements, including any improvements agreed to herein, to minimize any potential impact on the Village.

e. CSXT and NSR represent and warrant that the Proposed Transaction, if consummated, will result generally in no more than two NSR revenue trains operating through the NSR Crossing per day, in accordance with the proposed Trackage Rights Agreement and the Notices of Exemption filed with regard to the Proposed Transaction. NSR agrees to stage its trains and to operate through the NSR Crossing in such a manner to minimize potential impacts on the Village. In addition, CSXT and NSR agree to meet with Village and County public safety personnel to discuss how best to address and accommodate any public safety challenges that may result from the reestablishment of the NSR Connection.

3. The Village agrees that consistent with the cooperation of the Village, CSXT and NSR on these issues, the change of the Village's position on previous issues of dispute, and in consideration of the representations, warranties and agreements of CSXT and NSR set forth herein, the Village will withdraw its prior opposition to the Proposed Transaction and its requests for conditions to the STB's approval of the Proposed Transaction.

Sincerely,

Thomas J. Tisa
Head of Business Development
CSX Transportation, Inc.

Michael R. McClellan
VP Strategic Planning
Norfolk Southern Railway Company

AGREED TO:

Village of Voorheesville, NY

By: _____

Richard Straut, Mayor

## CERTIFICATE OF SERVICE

I hereby certify that I have caused this Letter in Docket No. FD-36472, *CSX Corporation and CSX Transportation, Inc.—Control and Merger—Pan Am Systems, Inc., Pan Am Railways, Inc., Boston and Maine Corporation, Maine Central Railroad Company, Northern Railroad, Pan Am Southern LLC, Portland Terminal Company, Springfield Terminal Railway Company, Stony Brook Railroad Company, and Vermont & Massachusetts Railroad Company*, to be served electronically or by first class mail, postage pre-paid, on all parties of record in this proceeding.

/s/ Sally Mordi

Sally Mordi
*Attorney for CSX Corporation and CSX Transportation, Inc.*

December 23, 2021



CSX Transportation
500 Water Street, J275
Jacksonville, FL 32202

December 16, 2021

Richard Straut
Mayor, Village of Voorheesville
29 Voorheesville Ave.
Voorheesville, NY 12186
mayor@villageofvoorheesville.com

Re:    CSX Corporation and CSX Transportation, Inc., et al. –
       Control and Merger – Pan Am Systems, Inc., et al.
       <u>Surface Transportation Board Docket No. FD 36472</u>

Dear Mayor Straut:

CSX Transportation, Inc. ("CSXT") and Norfolk Southern ("NSR") enter into this letter agreement with the Village of Voorheesville (the "Village") to resolve potential issues between the parties arising out of CSXT's amended application currently pending before the Surface Transportation Board ("STB") in the above-cited matter to acquire Pan Am Systems, Inc. and its various railroad subsidiaries, along with a directly related notice of exemption filed by NSR in a sub-docket to operate via trackage rights over CSXT's Selkirk Subdivision between the Village and Worcester, MA (together with CSXT's application, the "Proposed Transaction"). The Proposed Transaction, when consummated, would result in the rehabilitation of an existing rail connection between CSXT and NSR within the Village (the "NSR Connection"). In settlement of potential issues related to the Proposed Transaction, the parties agree as follows:

1. The following commitments are not contingent upon consummation of the Proposed Transaction:

    a. CSXT represents and warrants that it will continue to cooperate and assist the Village and Albany County (the "County") in the ongoing design and implementation of the County's proposed Quiet Zone for the Voorheesville Avenue and South Main Street at-grade crossings over CSXT (the "CSXT Crossings").

    b. CSXT and NSR both agree to advance the survey and design work for the Quiet Zone project through the necessary survey and design work NSR will perform in connection with the Proposed Transaction, the NSR Connection and the existing at-grade crossing over NSR at South Main Street (the "NSR Crossing"). In particular,

        i. NSR will, in connection with its design of the NSR Connection and Crossing, perform the topographical survey that the Village/County would otherwise need to perform for the Quiet Zone project.





    ii.   NSR will, in connection with its design of the NSR Connection and Crossing, perform the necessary design work to determine the roadway changes needed to accommodate the NSR Connection, the NSR Crossing and the Quiet Zone project. NSR expects this work to be completed by April 1, 2022.

    iii.   NSR will share the survey and design work with the Village/County to assist with their design of the roadway improvements related to the Quiet Zone project.

    iv.   CSXT and NSR commit to provide the Village/County with property interests/easements that may be required for S. Main St., Voorheesville Ave., Grove St., and Foundry Road to obtain state and/or federal funding for roadway and safety improvements necessitated by the NSR Connection and/or the Quiet Zone project.

  c.  CSXT confirms its commitment to safety and agrees to continue to take the reasonable steps necessary to address the Village's concerns relating to the falling of ballast from the existing CSXT overpass over Maple Avenue; and to work with the Village to accommodate cosmetic improvements to the exterior of the steel bridge structure and concrete bridge abutments.

2. In the event the Proposed Transaction is consummated and the NSR Connection is built:

  a.  CSXT and NSR acknowledge the Village's preference that the Quiet Zone project include (either as part of the existing proposed Quiet Zone at the CSXT Crossings or as a standalone Quiet Zone) the NSR Crossing, which will be traversed by NSR trains upon consummation of the Proposed Transaction, and will cooperate and assist the Village/County in achieving this objective.

  b.  The Village understands that the final design and preliminary engineering for the Quiet Zone project is incomplete at this time, and that ultimate completion of the Quiet Zone project will be subject to final roadway and signal design requirements for both the CSXT Crossings and the NSR Crossing. CSXT and NSR will work with the Village and County to reduce the overall cost of the Quiet Zone project via construction synergies and additional cost savings, which will result from their incorporating the Quiet Zone project into the upgrades and necessary improvements they will be making to the rail lines within the Village. Based on currently available information, the parties do not anticipate major roadway modifications (including pedestrian walkways) will be required at either location. Assuming no major roadway modifications, and subject to the Village/County obtaining currently available public funding for the Quiet Zone project, the parties anticipate that the commitments set forth below will allow for installation of the necessary active warning device



upgrades to complete the Quiet Zone project at the CSXT Crossings and NSR Crossing.

    i.  With respect to the CSXT Crossings:

        1.  Subject to the modifications and funding conditions referenced above, CSXT represents and warrants that it will perform the necessary improvements within CSX right-of-way to allow for completion of the Quiet Zone project at the CSXT Crossings, including installation of active grade crossing warning devices sufficient to obtain FRA approval for a Quiet Zone, at a cost equal to the order of magnitude cost estimate transmitted to the Village via letter dated August 10, 2016.

    ii.  With respect to the NSR Connection and NSR Crossing:

        1.  It is anticipated that the final design of the NSR Connection will require (subject to review and approval by NYSDOT and/or FRA) the installation of standard grade crossing warning devices and improvements to the highway alignment and profile at the NSR Crossing. Design of this work and installation of the standard grade crossing warning devices at the NSR Crossing will be at NSR expense, and will be configured so as not to preclude the establishment of a Quiet Zone at this location.

        2.  NSR agrees to construct the roadway changes needed to accommodate any NSR Connection and NSR Crossing, at NSR's expense, and CSXT will perform design review of the roadway design at no expense to the Village/County.

        3.  Additionally, NSR agrees to absorb up to $125,000 of its project costs for work not described above but specifically related to implementation of the Quiet Zone project at the NSR crossing or for other railroad-related work at other NSR at-grade crossings within the Village.

c.  The Village will work with the County as needed to progress the Quiet Zone project toward completion. The Village understands that, in the event the County's final project design requires major roadway modifications, including pedestrian walkways  (which in turn could impact CSXT and NSR's signal design), it will be responsible for obtaining any additional funding that may be required to complete the Quiet Zone project at either the CSXT Crossings or the NSR Crossings (or both, should the combined project qualify for one Quiet Zone), beyond the CSXT and NSR contributions described in 2(b) above.



    d.   The parties will work together in the design and construction of any necessary improvements, including any improvements agreed to herein, to minimize any potential impact on the Village.

    e.   CSXT and NSR represent and warrant that the Proposed Transaction, if consummated, will result generally in no more than two NSR revenue trains operating through the NSR Crossing per day, in accordance with the proposed Trackage Rights Agreement and the Notices of Exemption filed with regard to the Proposed Transaction.  NSR agrees to stage its trains and to operate through the NSR Crossing in such a manner to minimize potential impacts on the Village.  In addition, CSXT and NSR agree to meet with Village and County public safety personnel to discuss how best to address and accommodate any public safety challenges that may result from the reestablishment of the NSR Connection.

3.   The Village agrees that consistent with the cooperation of the Village, CSXT and NSR on these issues, the change of the Village's position on previous issues of dispute, and in consideration of the representations, warranties and agreements of CSXT and NSR set forth herein, the Village will withdraw its prior opposition to the Proposed Transaction and its requests for conditions to the STB's approval of the Proposed Transaction.

Sincerely,

Thomas J. Tisa
Head of Business Development
CSX Transportation, Inc.

Michael R. McClellan
VP Strategic Planning
Norfolk Southern Railway Company

AGREED TO:

Village of Voorheesville, NY

By: _____

     Richard Straut, Mayor

# EXHIBIT B



Norfolk Southern Corporation
650 West Peachtree Street NW – Box 45
Atlanta, GA 30308
404-245-0097
william.graham@nscorp.com

William Graham P.E.
Manager Construction

Steve Mason                                                                    September 10,2025
Code Enforcement Officer and Building Inspector
29 Voorheesville Avenue
Voorheesville, NY 12186

Dear Mr. Mason,

Norfolk Southern Railway Company is about to commence construction of a building that will support
railway operation in Voorheesville, NY. While Norfolk Southern is exempt from local land use regulations
in connection with this project, which does not require us to seek permits, we wanted to inform you of our
intention and provide you with copies of our building plans.

The Interstate Commerce Commission Termination Act, ICCTA, vests exclusive jurisdiction in the federal
Surface Transportation Board over "transportation by rail carriers" and the "construction, acquisition,
operation, abandonment or discontinuance of spur, industrial, team, switching, or side tracks, or facilities."
49 U.S.C. § 10501(b).  "Transportation" is broadly defined to include a "yard property, facility,
instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by
rail." 49 U.S.C. § 10102(9).

The STB had ruled that "state and local permitting or preclearance requirements…are preempted
because by their nature they unduly interfere with interstate commerce." Joint Petition for and Declaratory
Order- Boston and Maine Corp, and Town of Ayer, MA, STB Finance Docket No. 33971, 2001 WL
458685, at 5 (S.T.B. Apr. 30, 2001), aff'd, Boston & Maine Corp. v. Town of Ayer, 191 F. Supp. 2d 257 (D.
Mass. 2002).  Courts applying the ICCTA to railroad construction projects have followed suit.  See, e.g.,
Green Mountain Railroad Corporation v. State of Vermont, 404 F.3d 638 (2d Cir. 2005).  Any requirement
that Norfolk Southern submit to the Village's land use regulations in connection with the construction of
the proposed building would interfere with the interstate commerce and encroach upon the STB's
exclusive jurisdiction over railroad transportation.

Although the Village's land use regulations do not apply to this project for the reasons discussed above,
we will continue to keep the Village informed of our plans.  We hope this summary has been helpful and
we look forward to a long and mutually beneficial relationship with the Village of Voorheesville.


Sincerely,

*Will Graham*

Will Graham

EXHIBIT C



**Village of Voorheesville- Code Enforcement Office**
29 Voorheesville Ave., Voorheesville, NY 12186
Tel: 518-765-2698 Fax: 518-765-2967

## STOP WORK ORDER

Date: 9/10/2025

Please take notice that the Village of Voorheesville Code Enforcement Office has discovered a violation on your property. It is hereby ordered that all persons cease, desist from and STOP WORK at once pertaining to construction, alterations, or repairs on these premises know as:

SBL: 61.18-3-3.1
Village ID: 015-011
Location: 1 Countryside Ln

Specifically: All unauthorized construction acivity

PLEASE TAKE NOTICE that you are hereby ordered to remedy the following violations on your property by supplying a certified survey proving otherwise or by obtaining an area variance from the Village of Voorheesville Zoning Board of Appeals prior to the commencement of work.

_Steven Mason_
Steven Mason
Code Enforcement Officer

Please Note: ARTICLE XXV PENALTIES, of the Zoning Law of the Village of Voorheesville:

Any person or corporation who shall erect, construct, reconstruct, alter, repair, convert, move, demolish, occupy or maintain any building, or structure, or land, or divide any land in to lots, blocks, or sites contrary to any provisions of this local law or any rule or regulation adopted hereunder, or who shall fail to comply with the written notice, directive or order of a Village Building Inspector, or who shall construct, or occupy or use any building or structure in a manner not permitted by an approved building permit or Certificate of Occupancy, shall be in violation of this local aw, and in addition to any remedies provided for in Article seven of the village Law, shall be punishable for each such violation by a fine of up to two hundred fifty dollars ($250.00) or by imprisonment for up to fifteen (15) days or both. Each day that a violation continues shall be deemed a separate violation.



**Village of Voorheesville- Code Enforcement Office**
29 Voorheesville Ave., Voorheesville, NY 12186
Tel: 518-765-2698 Fax: 518-765-2967

# NOTICE OF VIOLATIONS

Property Location: 1 Countryside Ln
Tax Parcel No: 61.18-3-3.1

An inspection of your property revealed the attached items that need correction. Please correct all items by their respective compliance dates. If you have any questions, please contact the office to discuss.

Sincerely,

Steve Mason
Code Enforcement Officer
0418-0080

**VILLAGE OF VOORHEESVILLE**
**Code Enforcement Office**

## OUTSTANDING CORRECTIVE ACTIONS REQUIRED

**Property Address: 1 Countryside Ln**
**Tax Map # 61.18-3-3.1**

**Inspection #**

---

**Violation Date:** 9/10/2025

**Violation Number:** 25-008

**Issued To:** JC Pops Industrial Park, LLC

**Code:** Village of Voorheesville Zoning Law\Zoning Law of 2/15/2023\Article 10\B.Types of Proposals Requiring Site Plan Review\3.)

**Description:** 3.) All development and building proposals for non-residential uses.

**Comply By Date:** 9/10/2025

**Corrective Action(s) Required:** Cease and Desist all unauthorized construction activity and apply to the Planning Commission for a Site Plan Review.

---

**Violation Date:** 9/10/2025

**Violation Number:** 25-009

**Issued To:** JC Pops Industrial Park, LLC

**Code:** Village of Voorheesville Zoning Law\Zoning Law of 2/15/2023\Article 10\B.Types of Proposals Requiring Site Plan Review\6.)

**Description:** 6.) All proposals to expand or demolish existing business or industrial facilities or any proposals to alter existing business or industrial sites in relation to parking access, landscaping storage or any other site feature.

**Comply By Date:** 9/10/2025

**Corrective Action(s) Required:** Cease and Desist all unauthorized construction activity and apply to the Planning Commission for a Site Plan Review

EXHIBIT D



**GLEASON, DUNN, WALSH & O'SHEA**

**Attorneys at Law**

300 Great Oaks Boulevard, Suite 321
Albany, NY 12203
(p) 518 432 7511 (f) 518 432 5221

**Richard C. Reilly, Principal**
rreilly@gdwo.net / www.gdwo.com

September 23, 2025

*Via Email – michael.mcclellan@nscorp.com*

Michael R. McClellan
Vice President Strategic Planning
Norfolk Southern Railway Company
650 West Peachtree Street NW
Atlanta, GA 30308

*Via Email – william.graham@nscorp.com*

William Graham
Manager Construction
Norfolk Southern Railway Company
650 West Peachtree Street NW
Atlanta, GA 30308

RE:    Village of Voorheesville, New York
       December 16, 2021 Settlement Agreement
       Illegal Lot Line Adjustment (1 Countryside Lane)
       August 25, 2025 Water Tap Request

Dear Mr. McClellan:

This firm represents the Village of Voorheesville, New York (the "Village") in connection with the above referenced matter.

We are in receipt of Collier Engineering and Design's ("Collier") August 25, 2025 water tap request for a "crew training building" that is proposed to be located at "approximately 86 School Road"—which is apparently the name Collier gives to a portion (the "Illegal Carveout") of property, located at 1 Countryside Lane in the Village, that Norfolk Southern Railway Company ("Norfolk Southern") seeks to merge into its own lands. We are also in receipt of Mr. Graham's September 10, 2025 correspondence regarding the proposed "training building".

Mr. Graham's correspondence states that "Norfolk Southern is exempt from local land use regulations in connection with this project"—which will purportedly "support railway operation" in the Village. Setting aside the accuracy of this assertion—in the context of the particular project Norfolk Southern seeks to undertake, and the construction of Norfolk Southern's "training building" on adjacent commercial property—it goes without saying that 1 Countryside Lane (which is a Large Scale Business within the Industrial Zone, requiring a minimum lot size of five (5) acres) is itself subject land use regulations in the Village. And Norfolk Southern's status as a rail carrier does not eliminate the regulation that 1 Countryside Lane is subject to.

A Lot Line Amendment of any kind in connection with 1 Countryside Lane clearly requires that a waiver be obtained from the Planning Commission. Such Amendments are only available

RCR Ltr
McClellan / Graham Correspondence
Dated: September 23, 2025
Page 2 of 5

under limited conditions; including a determination that "such a waiver would not adversely affect the site development or alter the essential character of the Village. Absent a waiver for a Lot Line Amendment for 1 Countryside Lane, Subdivision Review is expressly required for an adjustment to the boundaries of that lot. And a subdivision requiring the "extension of municipal facilities" —which, based on Collier's purported water application on behalf of the non-existent "approximately 86 School Road," this subdivision does—is deemed to be a Major Subdivision.

Perhaps it is not surprising that the RP-5217 (Real Property Transfer Report) and the TP-584 (Combined Real Estate Transfer Tax Return) that Norfolk Southern caused to be filed with the County of Albany falsely state that 1 Countryside Lane is "vacant land"—and that both forms are filed under the Tax Map designation for 1 Countryside Lane (61.18-3-3.1), not Norfolk Southern's own property or a new parcel. The RP-5217 also falsely states that "Planning Board with Subdivision Authority Exists" for the Illegal Carveout; and inexplicably indicates that one (1) entire parcel was conveyed—but also that "Part of a Parcel" consisting of "0.00 Acres" was transferred.

Had Norfolk Southern accurately described what it was purporting to do by way of the Illegal Carveout from 1 Countryside Lane—without a stamped and approved Subdivision Map from the Village or review by the County Planning Board—the forms presumably would have been rejected by the County Clerk. As it is, we note that no 911 address has been issued for "approximately 86 School Road" because that property does not, in fact, actually exist. And the proposed Illegal Carveout from 1 Countryside Lane would cause it to be a non-conforming lot under current zoning.

In any event, please allow this correspondence to confirm that the Village in no way considers Norfolk Southern's attempted Illegal Carveout from 1 Countryside Lane legitimate or recognizable. If the owner of 1 Countryside Lane, or someone authorized to act on that owner's behalf, seeks to submit appropriate applications to the Village we are happy to review the same. In that context we can consider the potential impacts of the Illegal Carveout on the existing commercial uses operating out of 1 Countryside Lane—and the extent to which an Area Variance may be necessary. In the meantime, we consider the unauthorized work that you have commenced on the Illegal Carveout portion of 1 Countryside Lane unlawful. And the "Stop Work Order" that has been issued by the Village's Code Enforcement Officer will remain in effect.

In addition to the invalidity of the Illegal Carveout, moreover, and the lack of merit to the claim that the owner of 1 Countryside Lane can avoid necessary reviews and/or variances that may be required for whatever transaction or project he may be considering, we also note that Norfolk Southern's rumored, intended use of the proposed "crew training building" is entirely inconsistent with Norfolk Southern's prior commitments to the Village—and representations that Norfolk Southern has made to both the Village and the Surface Transportation Board in the past.

RCR Ltr
McClellan / Graham Correspondence
Dated: September 23, 2025
Page 3 of 5

As you undoubtedly know, by correspondence dated July 20, 2021 the Village had previously communicated to the Surface Transportation Board the significant concerns that the Village had with CSX's proposed acquisition of Pan-Am Systems, Inc—and the proposed construction of a new level junction between the existing CSX rail lines and the unused Norfolk Southern line. Among the Village's concerns was that the level junction and reactivated Norfolk Southern line would exacerbate longstanding quality-of-life and public safety concerns associated with existing train traffic.

As a result of the Village's opposition to the proposed transaction, in December 2021, CSX and Norfolk Southern entered into a "Settlement Agreement" with the Village to address the Village's concerns. Pursuant to Section 2(e) of that Settlement Agreement, which was promptly filed with the Surface Transportation Board, Norfolk Southern expressly agreed to "stage its trains and to operate through the NSR Crossing in such a manner to minimize potential impacts on the Village." In addition, Norfolk Southern agreed to "meet with Village and County public safety personnel to discuss how best to address and accommodate any public safety challenges that may result from the reestablishment of" Norfolk Southern's connection with the CSX rail line.

"[I]n consideration of the representations, warranties and agreements of CSX[] and [Norfolk Southern] as set forth" in the Settlement Agreement—which were the result of extensive negotiations between the parties—the "Village [] withdr[e]w its prior opposition to the Proposed Transaction and its request for conditions to the S[urface] T[ransportation] B[oard]'s approval." The Surface Transportation Board then expressly cited to the Settlement Agreement in its April 14, 2022 decision on the railroads' proposed acquisitions and mergers; and specifically ordered that the proposed transaction be approved, subject to the Settlement Agreement.[1]

It is our understanding that Norfolk Southern now seeks to use its proposed "crew training building" as a location where Norfolk Southern's trains will be brought to a complete stop—and crews swapped out—within the Village. Such a use of the Illegal Carveout from 1 Countryside Lane will clearly result in substantial disruption and a regular threat to the health, safety and welfare of the Village and its residents and businesses.

In particular, trains travelling in a westerly direction will block all three surface crossings within the Village for extensive periods of time—as Norfolk Southern's 1.7 mile long specialty trains are brought to a stop; paused at the "crew training building"; and then brought back up to speed from that complete stop, until the last of the cars at the rear of each train clears the Village crossings. Similarly, trains travelling in an easterly direction will block multiple crossings to the west of the Village (in the Town of Guilderland) while they are stopped and paused. And will then block crossings within the Village as the trains attempt to get back up to speed and clear the community.

---

[1] Surface Transportation Board Docket No. FD 36472, Decision No. 9

RCR Ltr
McClellan / Graham Correspondence
Dated: September 23, 2025
Page 4 of 5

During these periods of time, Norfolk Southern's proposed facility will effectively result in the Village being split in half—with half of Village residents and businesses (including the youth sports facilities operating out of 1 Countryside Lane) being cut off from emergency and other services. This presents an obvious threat to public health, safety and welfare—and is completely inconsistent with Norfolk Southern's prior representations (including to the Surface Transportation Board) that it would "minimize potential impacts on the Village" that could result from Norfolk Southern's reopened level junction with the CSX rail line.

In this regard, we also note that while Norfolk Southern may, itself, be exempt from certain state and local regulations under the Interstate Commerce Commission Termination Act, it is well settled by the Courts and by the Surface Transportation Board that federal law does not preempt all local requirements—especially where public health and safety is at issue. "[L]ocal bodies retain certain police powers which protect public health and safety," and municipalities "may exercise traditional police powers over the development of railroad property." To the extent a local government's requirements are "non-discriminatory regulations" that "protect public health and safety, are settled and defined, can be obeyed with reasonable certainty, entail no extended or open-ended delays, and can be approved (or rejected) without the exercise of discretion on substantive questions," A railroad is required to abide by such regulations and processes that a local government has in place. Green Mountain R.R. Corp. v. Vermont, 404 F.3d 638, 643 (2d Cir. 2005).

At no time during the Village's negotiations with Norfolk Southern—including prior to the December 2021 Settlement Agreement that has been submitted to the Surface Transportation Board—did Norfolk Southern indicate that it sought to bring its 1.7-mile-long specialty trains to a stop within the Village. To the contrary, Norfolk Southern has consistently represented—both verbally and in writing—that it's trains would be traveling at speeds of up to 25 miles per hour.

Finally, with multiple at-grade rail crossings within its municipal boundaries, the Village has a long history of working with the railroads—and, to the extent necessary, regulators—to ensure that that Village and its residents and business are adequately protected from trains blocking crossings for extended periods of time. By Order dated June 12, 1951, for example, the New York State Public Service Commission imposed limitations on railroads operating within the Village to reduce the amount of time that vehicular traffic was stopped at crossings. This Order, which was prompted by a Petition being filed by Village residents, cited to engineer's findings and recommendations that found crossing gates being lowered for as long as 12 to 24 minutes was unreasonable. Similarly, by Order dated June 13, 1962, the Commission approved certain modifications to the grade crossings that were requested by the railroads. The modifications were expressly conditioned, however, on the railroads preventing unnecessary traffic delays at each crossing.

We are not aware of any subsequent Order—from the State of New York or any other regulatory body—that relieves Norfolk Southern of its obligations to minimize delays at crossings.

RCR Ltr
McClellan / Graham Correspondence
Dated: September 23, 2025
Page 5 of 5

And we believe that Norfolk Southern's apparent intent to regularly bring its 1.7 mile long specialty trains to a complete stop within, or even adjacent to, the Village—so that its crews can access the "crew training building"—is completely inconsistent with same.

We are happy to discuss with you further how Norfolk Southern can "best address and accommodate any public safety challenges that may result from" the reestablishment of Norfolk Southern's connection with the CSX rail line that passes through the Village. We cannot concede, however, to Norfolk Southern's apparent attempt to exempt neighboring property owners and business from basic necessary and appropriate municipal approvals. Nor do we believe that Norfolk Southern's rumored, proposed use for the Illegal Carveout are consistent with Norfolk Southern's clear obligations under law, prior regulatory Orders or the parties' prior Settlement Agreement.

Thank you in advance for your attention to this matter. We look forward to hearing from you regarding same.

Very Truly Yours,

**GLEASON, DUNN, WALSH & O'SHEA, P.C.**

By: _____
Richard C. Reilly, Esq.

RCR/aa
cc:   Mayor Richard Straut, Village of Voorheesville
             (*via email mayor@villageofvoorheesville.com*)
      Supervisor Peter Barber, Town of Guilderland
             (*via email barberp@togny.org*)
      Supervisor Douglas LaGrange, Town of New Scotland
             (*via email dlagrange@townofnewscotland.com*)
      Gopika Muddappa, County of Albany
             (*via email gopika.muddappa@albanycountyny.gov*)
      Steve Mason, Village of Voorheesville, Code Enforcement
             (*via email building@villageofvoorheesville.com*)
      Brett Hotaling, Village of Voorheesville, Superintendent, Department of Public Works
             (*via email dpw@villageofvoorheesville.com*)

# EXHIBIT E

**From:** Richard Straut <mayor@villageofvoorheesville.gov>
**Sent:** Tuesday, October 7, 2025 9:48 AM
**To:** Fesen, Michael R. <Michael.Fesen@nscorp.com>
**Cc:** Steve Mason <building@villageofvoorheesville.gov>; Rich Reilly <rreilly@gdwo.net>
**Subject:** [EXTERNAL] Unavailable to meet today

Michael -
Mr. Reilly is not available to meet today so need to cancel the meeting you scheduled for this afternoon. It would be most productive if NS were to send details of the plan as we discussed at prior meetings before our next meeting.

Rich Straut
Mayor