UNITED STATE DISTRICT COURT
NORTHERN DIVISION OF NEW YORK
Albany Division

―――――――――――――――――――――――

NORFOLK SOUTHERN RAILWAY COMPANY,

　　　　　　　　Plaintiff/
　　　　　　　　Counterclaim-Defendant,

　　　v.

VILLAGE OF VOORHEESVILLE; RICHARD STRAUT,
in his official capacity as Mayor; STEVE MASON, in his
Official capacity as Code Enforcement Officer and Building
Inspector,

　　　　　　　　Defendants/
　　　　　　　　Counterclaim-Plaintiffs.

―――――――――――――――――――――――

VILLAGE OF VOORHEESVILLE,

　　　　　　　　Defendant/Counterclaim-Plaintiff/
　　　　　　　　Third-Party Plaintiff,

　　　v.

JC POPS INDUSTRIAL PARK, LLC,

　　　　　　　　Third-Party Defendant.

―――――――――――――――――――――――

**Civil Action No. 1:25-cv-1413
(BKS/ PJE)**

## ANSWER OF DEFENDANTS VILLAGE OF VOORHEESVILLE, RICHARD STRAUT, and STEVE MASON; WITH COUNTERCLAIMS AND THIRD-PARTY CLAIMS

　　　　Defendants Village of Voorheesville (the "Village"); Richard Straut ("Mayor Straut"); and

Steve Mason ("CEO Mason") (hereinafter, collectively "Defendants"), by and through their

attorneys, Gleason, Dunn, Walsh & O'Shea, P.C., as and for an Answer to the Complaint

(hereinafter the "Complaint") of Plaintiff Norfolk Southern Railway Company ("Norfolk

Southern"), allege as follows:

1

1.    With respect to paragraph "1" of the Complaint, Defendants refer to the parties' pleadings as the best evidence of the relief sought in this action; and otherwise DENY the allegations set forth therein, including the assertion that any order by the Village at issue in this litigation is federally preempted and/or that this Court should declare any Village order void or unenforceable.

2.    With respect to paragraph "2" of the Complaint, Defendants refer to the referenced Surface Transportation Board ("STB") proceedings as the best evidence of same; and otherwise DENY the allegations set forth therein, including any characterization of what STB members did or did not emphasize.

3.    With respect to paragraph "3" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; and otherwise DENY the allegations set forth therein, including any characterization of Norfolk Southern's actions and commitment to a "long and mutually beneficial relationship with" the Village.

4.    With respect to paragraph "4" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; refer to any "Stop Work Order" as the best evidence of its contents; and otherwise DENY the allegations set forth therein, including any suggestion that any Stop Work Order was issued in response to outreach by Norfolk Southern.

5.    With respect to paragraph "5" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; and, to the extent a response is otherwise necessary, DENY the allegations, including any characterization of the Village's actions.

6.  With respect to paragraph "6" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; and, to the extent a response is otherwise necessary, DENY the allegations, including any suggestion that Norfolk Southern's intentional stoppage of 1.7 mile double-decker trains at the edge of the Village, such that multiple crossings will be blocked for extended periods of time each day—jeopardizing the public health, safety and welfare—satisfies Norfolk Southern's contractual and legal obligation to "minimize" the impacts of its operations on the Village.

7.  With respect to paragraph "7" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; and, to the extent a response is otherwise necessary, DENY the allegations.

8.  With respect to paragraph "8" of the Complaint, Defendants note that said paragraph states legal conclusions to which no answer is required; and, to the extent a response is otherwise necessary, DENY the allegations.

9.  With respect to paragraph "9" of the Complaint, Defendants DENY KNOWLEDGE OR INFORMATION of the allegations set forth therein.

10.  With respect to paragraph "10" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; ADMIT that the Village is a village located in the Town of New Scotland, County of Albany, New York; and otherwise DENY the allegations set forth therein.

11.  With respect to paragraph "11" of the Complaint, Defendants ADMIT the allegations set forth therein.

12. With respect to paragraph "12" of the Complaint, Defendants ADMIT the allegations set forth therein.

13. With respect to paragraph "13" of the Complaint, Defendants note that said paragraph states legal conclusions to which no answer is required; and refer to the law(s) and case(s) cited as the best evidence of same.

14. With respect to paragraph "14" of the Complaint, Defendants note that said paragraph states legal conclusions to which no answer is required; and refer to the law(s) cited as the best evidence of same.

15. With respect to paragraph "15" of the Complaint, Defendants note that said paragraph states legal conclusions to which no answer is required; otherwise ADMIT the allegations set forth therein.

16. With respect to paragraph "16" of the Complaint, Defendants note that said paragraph states legal conclusions to which no answer is required; and refer to the law(s) cited as the best evidence of same.

17. With respect to paragraph "17" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the case(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

18. With respect to paragraph "18" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the case(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

19.  With respect to paragraph "19" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the case(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

20.  With respect to paragraph "20" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the case(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

21.  With respect to paragraph "21" of the Complaint, Defendants refer to the referenced STB proceedings as the best evidence of same; and, to the extent they require an answer, DENY any allegations characterizing those proceedings.

22.  With respect to paragraph "22" of the Complaint, Defendants refer to the referenced STB proceedings as the best evidence of same; and, to the extent they require an answer, DENY any allegations characterizing those proceedings.

23.  With respect to paragraph "23" of the Complaint, Defendants refer to the referenced STB proceedings as the best evidence of same; and, to the extent they require an answer, DENY any allegations characterizing those proceedings.

24.  With respect to paragraph "24" of the Complaint, Defendants refer to the referenced STB proceedings as the best evidence of same; ADMIT that—based on the Village's concerns about Norfolk Southern's proposed two hundred percent (200%) increase in rail traffic on its unused rail line through the Village and connection to the CSX rail line—the parties entered into a Settlement Agreement whereby Norfolk Southern agreed "to stage its trains and operate through the NSR Crossing [that Norfolk Southern proposed to construct] in such a manner [so] as to

minimize potential impacts" on the Village; and, to the extent they require an answer, DENY any remaining allegations characterizing those proceedings.

25.  With respect to paragraph "25" of the Complaint, Defendants refer to the referenced STB proceedings as the best evidence of same; ADMIT that the STB approved the application that was before it "subject to…[t]he terms of the [S]ettlement [A]greement….;" and, to the extent they require an answer, DENY any remaining allegations characterizing those proceedings.

26.  With respect to paragraph "26" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; and DENY the allegations set forth therein.

27.  With respect to paragraph "27" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; and otherwise DENY the allegations set forth therein.

28.  With respect to paragraph "28" of the Complaint, Defendants refer to the purported deed that is referenced as the best evidence of the contents therein; note that additional documents that were required to be filed with the County of Albany at the time the purported deed was filed contain material, false statements; and DENY the remaining allegations set forth therein.

29.  With respect to paragraph "29" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; and, to the extent a response is otherwise necessary, DENY the allegations set forth therein.

30.  With respect to paragraph "30" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; DENY KNOWLEDGE OR INFORMATION of Norfolk Southern's intent; ADMIT that contractors on the site have engaged

in unauthorized activities; refer to communication referenced as the best evidence of its contents referenced therein; and DENY any allegations characterizing those contents.

31. With respect to paragraph "31" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; refer to the document referenced as the best evidence of its contents; and DENY any allegations characterizing those contents, including any suggestion that Norfolk Southern has acted in a way that is consistent with either its contractual and legal obligations to the Village or a "mutually beneficial relationship with" the Village.

32. With respect to paragraph "32" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; refer to the Stop Work Order as the best evidence of its contents; note that the Stop Work Order was issued and delivered prior to any correspondence being transmitted by Norfolk Southern; and DENY any allegations characterizing its contents.

33. With respect to paragraph "33" of the Complaint, Defendants refer to the document referenced as the best evidence of its contents; and DENY any allegations characterizing those contents.

34. With respect to paragraph "34" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; refer to the document referenced as the best evidence of its contents; and DENY any allegations characterizing those contents.

35. With respect to paragraph "35" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; refer to the document

referenced as the best evidence of its contents; and DENY any allegations characterizing those contents.

36.  With respect to paragraph "36" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; refer to the document referenced as the best evidence of its contents; and DENY any allegations characterizing those contents.

37.  With respect to paragraph "37" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; acknowledge that a video call took place, during which time the parties scheduled a meeting (for a date and time that the Village Attorney was not available) and Mayor Straut communicated the Village's position that Norfolk Southern does not have the authority to cause an existing, non-railroad use of property to violate applicable local laws; and otherwise DENY the allegations set forth therein.

38.  With respect to paragraph "38" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; acknowledge that a video call took place, during which time the parties again scheduled a meeting (for a date and time that the Village Attorney was not available) and Mayor Straut communicated the Village's position that Norfolk Southern's actions, including its refusal to provide information regarding the length of time the stopping and starting of its trains was likely to cause crossings within the Village to be closed, violated Norfolk Southern's obligations under the Settlement Agreement and law; and otherwise DENY any allegations set forth therein.

39.  With respect to paragraph "39" of the Complaint, Defendants refer to the document referenced as the best evidence of its contents; and DENY any allegations characterizing those contents.

40. With respect to paragraph "40" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the document referenced as the best evidence of its contents; and DENY any allegations characterizing those contents.

41. With respect to paragraph "41" of the Complaint, Defendants ADMIT the allegations set forth therein.

42. With respect to paragraph "42" of the Complaint, Defendants refer to the paragraphs referenced and incorporate herein the answers made to each.

43. With respect to paragraph "43" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the case(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

44. With respect to paragraph "43" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; refer to the Stop Work Order as the best evidence of its contents; and DENY the allegations set forth therein, including Norfolk Southern's characterization of the Village's position and the assertion that the Stop Work Order "intrudes on the STB's exclusive jurisdiction."

45. With respect to paragraph "45" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the case(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

46. With respect to paragraph "46" of the Complaint, Defendants refer to the paragraphs referenced and incorporate herein the answers made to each.

47.  With respect to paragraph "47" of the Complaint, Defendants note that said paragraph states legal conclusions to which no answer is required; and refer to the law(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

48.  With respect to paragraph "48" of the Complaint, Defendants DENY the allegations set forth therein, including the suggestion that the Village's enforcement of local laws that regulate the subdivision of non-railroad property, and Norfolk Southern's compliance with the Settlement Agreement that Norfolk Southern itself entered into and presented to the STB, will "effectively eliminate Norfolk Southern's ability to commence and operate" the inter-modal service that the STB has approved "subject to" the Settlement Agreement that Norfolk Southern now seeks to avoid.

49.  With respect to paragraph "49" of the Complaint, Defendants DENY the allegations set forth therein; and note that, contrary to the assertion that "other locations [are] not feasible," Norfolk Southern has already identified such alternate locations because the "Voorheesville location" is not long enough (without blocking crossings that are less than 1.5 miles apart) to allow for the stoppage of the full 1.7 mile long trains approved by the STB.

50.  With respect to paragraph "50" of the Complaint, Defendants note that said paragraph states legal conclusions to which no answer is required; further note that, upon information and belief, Norfolk Southern has not entered into a Settlement Agreement expressly requiring that it "minimize potential impacts" with "every local government…[along its] interstate rail network"; and otherwise DENY the allegations set forth therein.

51.  With respect to paragraph "51" of the Complaint, Defendants refer to the paragraphs referenced and incorporate herein the answers made to each.

52.  With respect to paragraph "52" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the case(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

53.  With respect to paragraph "53" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure; and DENY the allegations set forth therein, including the assertion that the Village's generally applicable, 2001 Subdivision Law and 2019 Zoning Code "discriminate against rail carriers" when then they are applied against an existing, non-railroad, property owner who is operating an  active business within the Village's Industrial Zone.

54.  With respect to paragraph "54" of the Complaint, Defendants note that said paragraph fails to comply with Rule 10 of the Federal Rules of Civil Procedure and states legal conclusions to which no answer is required; refer to the case(s) cited as the best evidence of same; and otherwise DENY the allegations set forth therein.

55.  Defendants DENY each and every allegation and paragraph not otherwise responded to herein.

## FACTS RELATED TO DEFENDANTS' AFFIRMATIVE DEFENSES, COUNTERCLAIMS and THIRD-PARTY CLAIMS

56.  Defendants, without admitting to the allegations contained in Plaintiff's Complaint, set forth the following facts and allegations:

57.  Third-Party Defendant JC Pops Industrial Park, LLC ("JC Pops") is a limited liability company with a principal place of business at 1299 Schoharie Turnpike, Duanesburg, New York 12056, and is authorized to do business in New York. As such, the Court has personal jurisdiction over JC Pops.

58.  The Court has personal jurisdiction over Norfolk Southern because it has submitted itself to the jurisdiction of the Court by commencing the underlying action.

59.  The Court has subject matter jurisdiction over these Counterclaims and Third-Party Claims pursuant to 28 U.S.C. §1367 because they are related to the claims asserted by Norfolk Southern against Defendants, and 28 U.S.C. §1367 allows for the joinder of additional parties.

**I.      Norfolk's Southern's Settlement Agreement with the Village**

60.  By correspondence dated July 20, 2021 the Village communicated to the STB significant concerns that the Village had with respect to a transaction that required STB approval—which transaction involved the proposed construction of a new level junction between existing CSX rail lines and an unused Norfolk Southern line.

61.  Among the Village's concerns was that the level junction and reactivated Norfolk Southern line would exacerbate longstanding quality-of-life and public safety concerns associated with existing train traffic.

62.  As a result of the Village's opposition to the proposed transaction, CSX and Norfolk Southern engaged in extensive negotiations with the Village regarding the Village's concerns.

63.  As a result of the Village's opposition to the proposed transaction, in December 2021, CSX and Norfolk Southern entered into a "Settlement Agreement" with the Village.

64.  Pursuant to Section 2(e) of the Settlement Agreement, which was promptly filed with the Surface Transportation Board, Norfolk Southern expressly agreed to "stage its trains and to operate through the NSR Crossing in such a manner to minimize potential impacts on the Village."

65.  Pursuant to Section 2(e) of the Settlement Agreement, Norfolk Southern agreed to "meet with Village and County public safety personnel to discuss how best to address and

accommodate any public safety challenges that may result from the reestablishment of" Norfolk Southern's connection with the CSX rail line.

66.   As set forth in Section 3 of the Settlement Agreement, "in consideration of the representations, warranties and agreements of CSX[] and [Norfolk Southern] as set forth" in the Settlement Agreement—the "Village [] withdr[e]w its prior opposition to the Proposed Transaction and its request for conditions to the S[urface] T[ransportation] B[oard]'s approval."

## II.      The STB's Issuance of an Order "Subject to" the Settlement Agreement

67.   The Surface Transportation Board expressly cited to the Settlement Agreement in its April 14, 2022 decision on the railroads' proposed acquisitions and mergers; and specifically ordered that the proposed transaction be approved "subject to" the Settlement Agreement.

68.   As a result of the Settlement Agreement, CSX and Norfolk were able to avoid additional environmental review of the proposed transaction, including with respect to Norfolk Southern's proposed two hundred percent (200%) increase in rail traffic on its unused rail line through the Village and connection to the CSX rail line.

## III.     Norfolk's Southern's Proposed "Crew-Change Facility" Within the Village

69.   As reflected in the Complaint, Norfolk Southern now seeks to construct a "crew-change facility" on land within the Village that it has purported to subdivide out of a neighboring, non-railroad property.

70.   Norfolk Southern proposes to use its proposed crew-change facility as a location where Norfolk Southern's trains will be brought to a complete stop—and crews swapped out—within the Village.

IV.     The Public Safety Threat Posed by the Proposed "Crew-Change Facility"

71.  The crew-change facility will result in substantial disruption and a regular threat to the health, safety and welfare of the Village and its residents and businesses.

72.  Trains that stop at the crew-change facility while travelling in a westerly direction will block all three surface crossings within the Village for extensive periods of time—as Norfolk Southern's 1.7 mile-long specialty trains are brought to a stop; paused at the "crew training building," and then brought back up to speed from that complete stop, until the last of the cars at the rear of each train clears the Village crossings.

73.  Trains that stop at the crew-change facility while travelling in an easterly direction will block one or more crossing(s) to the west of the Village (in the Town of Guilderland) while they are stopped and paused.

74.  Trains that stop at the crew-change facility while travelling in an easterly direction will also block crossings within the Village as the trains attempt to get back up to speed and clear the community.

75.  To the extent Norfolk Southern's trains are less than 1.5 miles long (despite the fact that the STB has authorized Norfolk Southern's trains to be 1.7 miles long), these trains will still block all three surface crossings within the Village—for extensive periods of time—as the trains are brought to a stop; and then brought back up to speed from that complete stop, until the last of the cars at the rear of each train clears the Village crossings.

76.  During these periods of time, Norfolk Southern's proposed use of a crew-change facility in the Village will effectively result in the Village being split in half—with half of the Village's residents and businesses being cut off from emergency and other services that are located on the other side of a train.

77.  Norfolk Southern is known for repeatedly causing its trains to block surface crossings within communities for extended periods of time, including under circumstances where children are required to climb under or over stationary trains to get to school.

78.  Norfolk Southern's proposed, extended blockages of surface crossings within the Village, including while Voorheesville Elementary School students are being released, presents an obvious threat to public health, safety and welfare of the Village.

79.  The severe public health, safety and welfare consequences of Norfolk Southern's proposed, extended blockages of surface crossings within the Village is exacerbated by the fact that the sole other means of traversing the rail lines within the Village—an underpass maintained by CSX—is frequently blocked by tractor trailers and other vehicles that are not able to fit beneath the underpass.

**V.      Norfolk Southern's Refusal to Comply with the Settlement Agreement**

80.  At no time during the Village's negotiations with Norfolk Southern—including prior to the December 2021 Settlement Agreement that has been submitted to the Surface Transportation Board—did Norfolk Southern indicate that it sought to bring its 1.7-mile-long specialty trains to a stop within or adjacent to the Village.

81.  To the contrary, Norfolk Southern and CSX consistently represented—both verbally and in writing—that the trains would simply be traveling through the Village at speeds of up to 25 miles per hour.

82.  Norfolk Southern representatives have stated to Village representatives that Norfolk Southern has already identified an alternative site for a crew-change facility, to the west of the crew-change facility that Norfolk Southern proposes to construct within the Village.

83.    Norfolk Southern's proposed, extended blockages of surface crossings within the Village is completely inconsistent with CSX's and Norfolk Southern's prior representations (including to the Surface Transportation Board) that it would "minimize potential impacts on the Village" that could result from Norfolk Southern's reopened level junction with the CSX rail line.

84.    Norfolk Southern's proposed, extended blockages of surface crossings within the Village is completely inconsistent with Norfolk Southern's obligations under the Settlement Agreement to "minimize potential impacts on the Village" that could result from Norfolk Southern's reopened level junction with the CSX rail line.

85.    Norfolk Southern representatives have stated to Village representatives that every day, two (2) of Norfolk Southern's proposed 1.7 mile-long specialty trains will be brought to a complete stop within the Village; and every day, at least one (1) of these specialty trains will be brought to a complete stop within the Village at or about the time that the Voorheesville Elementary School releases its students for the day.

86.    Despite being asked, Norfolk Southern has refused to provide Village representatives with estimates of the amount of time it will take for Norfolk Southern trains that are brought to a complete stop and restarted within or adjacent to the Village to clear the Village's three (3) surface crossings.

87.    Upon information and belief, the stopping and starting of Norfolk Southern's trains at the proposed crew-change facility could cause surface crossings in the Village to be blocked for more than thirty (30) minutes at a time just while the trains slow down to come to a complete stop and pick up speed from their complete stop—and not including those times when trains are actually stopped while physically blocking a crossing.

88.  Thousands of cars traverse the three (3) surface crossings within the Village each day; in addition to bicyclists and pedestrians (including children).

89.  Norfolk Southern's refusal to provide Village representatives with estimates of the amount of time Norfolk Southern's trains will cause surface crossings within the Village to be blocked is completely inconsistent with Norfolk Southern's prior representations (including to the Surface Transportation Board) that it would "meet with Village and County public safety personnel to discuss how best to address and accommodate any public safety challenges that may result from the reestablishment of" Norfolk Southern's connection with the CSX rail line.

90.  Norfolk Southern's refusal to provide Village representatives with estimates of the amount of time Norfolk Southern's trains will cause surface crossings within the Village to be blocked is completely inconsistent with Norfolk Southern's obligations under the Settlement Agreement to "meet with Village and County public safety personnel to discuss how best to address and accommodate any public safety challenges that may result from the reestablishment of" Norfolk Southern's connection with the CSX rail line.

**VI.    Norfolk Southern's Obligations Are Not Preempted by Federal Law**

91.  It is well settled that the STB and federal law do not preempt all local requirements that may affect an action that a railroad may seek to take—especially where public health and safety is at issue.

92.  The STB and federal law do not preempt actions by state and local governments under their retained police powers.

93.  The fact that a railroad is performing rail transportation authorized by the STB is not a license for a railroad to take, or refuse to take, whatever actions they may want.

94. It is well settled that the STB and federal law do not preempt local requirements that may affect a railroad's acquisition of new property.

95. It is well settled that the STB and federal law do not preempt state or local laws that affect whether an attempted conveyance of real property is void or invalid.

96. The STB has routinely declined to address railroads' claims of preemption while state courts determine whether a railroad has actually acquired title to property it claims to use for an authorized purpose.

97. The STB and federal law do not preempt contractual agreements, such as the Settlement Agreement, that are willingly entered into by a railroad and local government.

98. STB regulations and federal law do not preempt orders of the STB that are expressly made "subject to" contractual agreements, such as the Settlement Agreement, that are willingly entered into by a railroad and local government.

**VII.    Norfolk Southern's Attempted Illegal Subdivision of Neighboring Lands**

99. On or about August 25, 2025, Collier Engineering and Design's ("Collier") transmitted to the Village a water tap request for a "crew training building" that is proposed to be located at "approximately 86 School Road."

100. 86 School Road is not an existing or recognized address within the Village; does not have a real property tax identification number; and is not separately taxed by the County of Albany, Town of New Scotland or Village of Voorheesville.

101. 86 School Road does not have any road frontage on a public highway; and does not have access to a public water main.

102.   On or about September 10, 2025, CEO Mason issued a "Stop Work Order" in connection with unauthorized construction work that was taking place at 1 Countryside Lane within the Village.

103.   Following the issuance of the Stop Work Order, Norfolk Southern wrote to the Village concerning Norfolk Southern's intent to construct a crew-change facility on a portion of 1 Countryside Lane.

104.   1 Countryside Lane is owned by JC Pops, which operates what is defined as a "Large Scale Business" within the Village's Industrial Zone.

105.   Both 1 Countryside Lane and JC Pops are subject to land use regulations within the Village.

106.   A Large Scale Business within the Industrial Zone, requires a minimum lot size of five (5) acres; and at the time of JC Pops' prior approvals from the Village, 1 Countryside Lane consisted of approximately 5.6 acres.

107.   A Lot Line Amendment of any kind in connection with 1 Countryside Lane requires that a waiver be obtained from the Village's Planning Commission.

108.   Lot Line Amendments are only available under limited conditions; including a determination that "such a waiver would not adversely affect the site development or alter the essential character of the Village."

109.   Absent a waiver for a Lot Line Amendment for 1 Countryside Lane, Subdivision Review is expressly required for an adjustment to the boundaries of that lot.

110.   A subdivision requiring the "extension of municipal facilities"—which the attempted subdivision of 1 Countryside Lane does based on Collier's purported water application on behalf of the non-existent "approximately 86 School Road"—is deemed to be a Major Subdivision.

111.  There is no public water main that fronts or services 1 Countryside Lane; instead 1 Countryside Lane is serviced by a non-potable, privately owned well.

112.  No Lot Line Amendment or Major Subdivision approval has been applied for by JC Pops, or anyone acting on JC Pops' behalf, in connection with 1 Countryside Lane.

113.  Nevertheless, Norfolk Southern has solicited from JC Pops, and JC Pops has apparently transmitted to Norfolk Southern, a supposed deed (the "Deed") for a purported illegal carveout (the "Illegal Carveout") from 1 Countryside Lane.

114.  The RP-5217 (Real Property Transfer Report) and the TP-584 (Combined Real Estate Transfer Tax Return) that Norfolk Southern caused to be filed with the County of Albany in connection with the Deed falsely state that 1 Countryside Lane is "vacant land."

115.  The RP-5217 and the TP 584 that Norfolk Southern caused to be filed in connection with the Deed are filed under the Tax Map designation for 1 Countryside Lane (61.18-3-3.1), not Norfolk Southern's own property or a new parcel.

116.  The RP-5217 Norfolk Southern caused to be filed in connection with the Deed also falsely states that "Planning Board with Subdivision Authority Exists" for the Illegal Carveout.

117.  The RP-5217 Norfolk Southern caused to be filed in connection with the Deed further states, falsely, that one (1) entire parcel was conveyed—but also contradictorily that "Part of a Parcel" consisting of "0.00 Acres" was transferred.

118.  The filing of a false instrument in the State of New York is a crime; and the filing of a false instrument with the intent to defraud the State or a political subdivision is a felony.

119.  Upon information and belief, had Norfolk Southern accurately described what it was purporting to do by way of the Illegal Carveout from 1 Countryside Lane—without a stamped and

approved Subdivision Map from the Village or review by the County Planning Board—the forms would have been rejected by the Albany County Clerk.

120.  No 911 address has been issued for "approximately 86 School Road" because that parcel does not, in fact, actually exist.

121.  No property tax identification number, or property tax bill, has been issued for "approximately 86 School Road" because that parcel does not, in fact, actually exist.

122.  The proposed Illegal Carveout from 1 Countryside Lane would cause that lot to be less than the five (5) acre minimum required for a Large Scale Business in the Industrial Zone.

123.  The proposed Illegal Carveout from 1 Countryside Lane would cause 1 Countryside Lane and JC Pops' operations thereon to be in violation of the Village's current zoning.

## VIII.    Norfolk Southern's Cannot Exempt Neighboring Businesses From Oversight

124.  JC Pops is obligated to comply with the Village's local laws and is not permitted to avoid necessary reviews and/or variances that may be required for whatever transaction or project it may be considering.

125.  Norfolk Southern's status as a rail carrier does not eliminate the regulation that 1 Countryside Lane and JC Pops are subject to.

126.  Norfolk Southern's attempt to exempt neighboring property owners and business from basic necessary and appropriate municipal approvals has no basis under law.

## IX.    The Applicable Penalties for Violations of the Village's Local Laws

127.  Any person or corporation who erects, occupies or maintains any building or structure or land, or divides any land into lots, blocks or sites contrary to any provision of the Village's local laws, or in a manner that is not permitted by any approved building permit or certificate of

compliance is, in addition to any remedies provided under the New York State Village Law, liable to the Village for a fine of up to two hundred fifty dollars ($250.00) per violation.

128. Each violation is subject to a separate fine; and every day that a violation of the Village's local laws continues is deemed a separate violation.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

129. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

130. Plaintiff's Complaint fails to state a cause of action upon which relief can be granted by this Court.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

131. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

132. Plaintiff is estopped from taking the position that it is not bound "to stage its trains and operate through the [Village] in such a manner [as to] minimize potential impacts on the Village"—having represented to the STB that it would do so.

133. Plaintiff is estopped from refusing to meet and confer with the Village "to discuss how best to address and accommodate any public safety challenges that may result from the reestablishment of" its connection with the CSX rail line.

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

134. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

135. Plaintiff's attempt to cause JC Pops, a non-railroad party, to subdivide and use its property without complying with applicable local laws and regulations is illegal.

136.  JC Pops' attempted subdivision of 1 Countryside Lane without complying with applicable local laws and regulations is illegal.

137.  Plaintiff's causing of documents that contain material, false statements to be filed with a deed to the Illegal Carveout is illegal.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

138.  Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

139.  Plaintiff's obligation to adhere to the Settlement Agreement, including by "stag[ing] its trains and [] operat[ing] through the [Village] in such a manner [as] to minimize potential impacts on the Village" should be treated as res judicata.

140.  Plaintiff's obligation to adhere to the Settlement Agreement, including by conferring with the Village "to discuss how best to address and accommodate any public safety challenges that may result from the reestablishment of" its connection with the CSX rail line should be treated as res judicata.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

141.  Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

142.  By entering into the Settlement Agreement and representing to the STB that it would "stage its trains and [] operate through the [Village] in such a manner [as] to minimize potential impacts on the Village" Plaintiff waived any right that it may have otherwise had to install and operate its Crew Change Facility on the Illegal Carveout.

143.  By entering into the Settlement Agreement and representing to the STB that it would meet and confer with the Village "to discuss how best to address and accommodate any public

safety challenges that may result from the reestablishment of" its connection with the CSX rail line Plaintiff waived any right that it may have otherwise had to install and operate its Crew Change Facility on the Illegal Carveout.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

144.  Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

145.  Plaintiff has failed to name all necessary parties to this litigation, including JC Pops, and all parties to the STB Decision (Docket No. FD 36472) issued "subject to" the Settlement Agreement that Norfolk Southern now acts in contravention of.

146.  Plaintiff is not entitled to the relief sought, therefore; and its claims must be dismissed.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

147.  Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

148.  Plaintiff's claims are barred by the doctrine of unclean hands.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

149.  Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

150.  Upon information and belief, Plaintiff negotiated and executed the Settlement Agreement knowing without disclosing to the Village that it intended to install and operate its Crew Change Facility on the Illegal Carveout.

151.  Upon information and belief, Norfolk Southern negotiated and executed the Settlement Agreement in bad faith.

## AS AND FOR AN NINTH AFFIRMATIVE DEFENSE

152. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

153. The Village's actions are based on legitimate, independent, non-discriminatory reasons and generally applicable laws that do not result in any unreasonable burden on interstate commerce.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

154. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

155. Plaintiff cannot establish that the Village's enforcement of its local laws against the non-railroad Third-Party Defendant is merely pre-textual.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

156. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

157. The Village's enforcement of its local laws against JC Pops, and in connection with Plaintiff's attempted illegal acquisition of real property, is not preempted.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

158. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

159. Plaintiff's claims concerning the validity of an attempted acquisition of real property by a rail carrier are contrary to prior holdings of the STB and courts.

## COUNTERCLAIMS AGAINST PLAINTIFF and
## CLAIMS AGAINST THIRD-PARTY DEFENDANT

### AS AND FOR A FIRST COUNTERCLAIM
(Against Norfolk Southern and for Declaratory Relief and a Permanent Injunction)

160. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

161. Norfolk Southern entered into a Settlement Agreement with the Village on or around December 27, 2021 wherein it agreed to "stage its trains and to operate through the NSR Crossing in such a manner to minimize potential impacts on the Village;" and to "meet with Village and County public safety personnel to discuss how best to address and accommodate any public safety challenges that may result from the reestablishment of" Norfolk Southern's connection with the CSX rail line.

162. Norfolk Southern is bound by the terms of the Settlement Agreement.

163. Norfolk Southern's construction and intended use of the crew-change facility will substantially increase, rather than minimize, the impact of Norfolk Southern's trains on the Village.

164. Norfolk Southern's construction and intended use of the crew-change facility is a breach of the terms of the Settlement Agreement.

165. As a direct result of Norfolk Southern's breach of the Settlement Agreement, the Village has incurred and will continue to incur irreparable harm.

166. An actual and bona fide controversy within the jurisdiction of this Court exists with respect to the effect of Norfolk Southern's actions and the Settlement Agreement.

167. The Village is entitled to a declaration of its rights.

168. The Village is entitled to a declaration that Norfolk Southern is bound by the terms of the Settlement Agreement.

169.  The Village is entitled to a declaration that Norfolk Southern's conduct is a breach of the Settlement Agreement.

170.  The Village is entitled to permanent injunctive relief, enjoining Norfolk Southern's breach of the Settlement Agreement, and construction and intended use of the crew-change facility that will maximize, rather than minimize, the impact of Norfolk Southern's trains on the Village.

### AS AND FOR A SECOND COUNTERCLAIM
(Against Norfolk Southern and for Declaratory Relief and a Permanent Injunction)

171.  Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

172.  In an STB Decision dated April 14, 2022 (Docket No. FD 36472) ("STB Decision"), the STB, in relevant part, approved a transaction allowing Norfolk Southern to construct a new level junction and reactivate an unused Norfolk Southern line explicitly subject to, among other conditions, the terms of the Settlement Agreement.

173.  Norfolk Southern is bound by the STB Decision.

174.  Norfolk Southern's authority to construct a new junction and reactivate the unused Norfolk Southern line is based on its assurances to the STB that it would act in accordance with the terms of the Settlement Agreement.

175.  Norfolk Southern's construction and intended use of a crew-change facility will substantially increase, rather than minimize, the impact of Norfolk Southern's trains on the Village.

176.  Norfolk Southern's failure to conduct itself in compliance with the terms of the Settlement Agreement is a violation of the STB's Decision.

177.  An actual and bona fide controversy within the jurisdiction of this Court exists with respect to the effect of Norfolk Southern's actions and the STB's Decision.

178.  The Village is entitled to a declaration of its rights.

179.  The Village is entitled to a declaration that Norfolk Southern is bound by the STB Decision.

180.  The Village is entitled to a declaration that Norfolk Southern's conduct is a violation of the STB's Decision.

181.  The Village is entitled to permanent injunctive relief, enjoining Norfolk Southern's violation of the STB Decision, and construction and intended use of a crew-change facility that will substantially increase, rather than minimize, the impact of Norfolk Southern's trains on the Village.

## AS AND FOR A THIRD COUNTERCLAIM
(Against Norfolk Southern and for Collateral Estoppel)

182.  Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

183.  An actual and bona fide controversy within the jurisdiction of this Court exists with respect to whether Norfolk Southern is collaterally estopped from constructing and operating the crew-change facility.

184.  The Village is entitled to a declaration of its rights.

185.  The Village is entitled to a declaration that Norfolk Southern is collaterally estopped from constructing and operating a crew-change facility that will substantially increase, rather than minimize, the impact of Norfolk Southern's trains on the Village.

## AS AND FOR A FOURTH COUNTERCLAIM AND FIRST THIRD-PARTY CLAIM
(Against Norfolk Southern and JC Pops and for Declaratory Relief)

186.  Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

187. JC Pops owns property located within the Village and, as such, is bound by the Village's local laws.

188. JC Pops was bound by the Village's local laws when it purported to convey the Illegal Carveout to Norfolk Southern.

189. The Illegal Carveout would cause 1 Countryside Lane and JC Pops' operations thereon to be in violation of the Village's current Subdivision Law and Zoning Code.

190. An actual and bona fide controversy within the jurisdiction of this Court exists with respect to whether JC Pops is bound by the Village's zoning code, and whether the Illegal Carveout is a violation of the Village's current zoning code.

191. The Village is entitled to a declaration of its rights.

192. The Village is entitled to a declaration that JC Pops is bound by the Village's zoning code; that the Illegal Carveout is a violation of the Village's current Subdivision Law and Zoning Code; and that the attempted conveyance of the Illegal Carveout is void and invalid.

## AS AND FOR A SECOND THIRD-PARTY CLAIM
### (Against JC Pops and for Monetary Damages)

193. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

194. As a result of JC Pops' violation of the Village's Zoning code, the Village is entitled to monetary damages in the amount of up to two hundred fifty dollars ($250) per violation, with each day that a violation continues being deemed a separate violation.

## JURY DEMAND

195. Defendants repeat and reallege each of the foregoing paragraphs as if set forth more fully herein.

196. Defendants hereby demand a trial by jury on all issues.

**WHEREFORE**, Defendants pray for an order and judgment as follows:

(i)     Declaring that Norfolk Southern is bound by the terms of the Settlement Agreement; Norfolk Southern's conduct is a breach of the Settlement Agreement; Norfolk Southern is bound by the STB Decision; Norfolk Southern's conduct is a violation of the STB Decision; Norfolk Southern is collaterally estopped from constructing and operating the crew-change facility; JC Pops is bound by the Village's local laws; the Illegal Carveout is a violation of the Village's current Subdivision Law and Zoning Code; and the conveyance of the Illegal Carveout is void;

(ii)    Awarding permanent injunctive relief, enjoining Norfolk Southern's construction and operation of the crew-change facility on land that it does not own and without the owner of that land obtaining necessary approvals;

(iii)   Awarding monetary damages to the Village for JC Pops' violations of the Village's Subdivision Law and Zoning Code;

(iv)    Awarding attorneys' fees, costs, and disbursements as authorized by law; and

(iii)   Awarding such other and further relief as to the Court seems just and proper.

Dated: Albany, New York          **GLEASON, DUNN, WALSH & O'SHEA, P.C.**
October 31, 2025

*s/ John P. Calareso, Jr.*

By: _____
          John P. Calareso, Jr.
          Bar Roll No. 511222
          Kathryn D. Bobel
          Bar Roll No. 704349
          *Attorneys for*
          *Defendants/Third-Party Plaintiff*
          Office and Post Office Address
          300 Great Oaks Boulevard, Suite 321
          Albany, New York 12203
          Telephone: (518) 432-7511
          Email:  jcalareso@gdwo.net
                      kbobel@gdwo.net

To:     John J. Jablonski
          David P. Johnson
          Gerber Ciano Kelly Brady LLP
          *Attorneys for Plaintiff*
          599 Delaware Avenue, Suite 100
          Buffalo, New York 14202
          (716) 313-2082

jjablonski@gerberciano.com
djohnson@gerberciano.com

Tobias S. Loss-Eaton
        (*pro hac vice*)
Sidley Austin LLP
*Attorneys for Plaintiff*
1501 K Street, NW
Washington D.C. 20005
(202) 736-8427