UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

NORFOLK SOUTHERN RAILWAY COMPANY,

        Plaintiff/
        Counterclaim-Defendant,

v.

VILLAGE OF VOORHEESVILLE; RICHARD STRAUT,
in his official capacity as Mayor; STEVE MASON, in his
Official capacity as Code Enforcement Officer and Building
Inspector,

        Defendants/
        Counterclaim-Plaintiffs.

**Civil Action No. 1:25-cv-1413 (BKS/ PJE)**

---

VILLAGE OF VOORHEESVILLE,

        Defendant/Counterclaim-Plaintiff/
        Third-Party Plaintiff,

v.

JC POPS INDUSTRIAL PARK, LLC,

        Third-Party Defendant.

---

## DECLARATION OF STEVEN MASON

I, Steven Mason, declare pursuant to 28 U.S.C. § 1746 as follows:

1.    I am the Code Enforcement Officer for the Village of Voorheesville ("the Village"). I have served as Code Enforcement Officer since in or about 2018. I make this declaration based on my personal knowledge of the facts and circumstances set forth herein.

2.    As Code Enforcement Officer, I am responsible for administering the Village's Zoning Code and Subdivision Law. I am also responsible for ensuring that all development and

1

construction in the Village is completed in accordance with generally applicable state and local regulations—such as the Uniform Fire Prevention and Building Code that has been enacted by the State of New York. (N.Y. Executive Law §377; 19 NYCRR 1203).

3. I am aware that in the past six (6) months Norfolk Southern Railroad Company ("Norfolk Southern") has purported to acquire additional property in the Village from JC Pops Industrial Park, LLC ("JC Pops"). In particular, Norfolk Southern solicited a deed for a portion (the "Property") of a parcel of land that JC Pops uses to run an ongoing "Large Scale Business" within the Village.

4. JC Pops' tax parcel currently contains four (4) separate commercial structures plus one additional approved use for the Property that Norfolk Southern now claims to have acquired—out of which approximately one-half (1/2) dozen separate businesses and organizations operate or are authorized to operate.

5. The minimum lot size for a Large Scale Business within the Village's Industrial Zone is five (5) acres. (Voorheesville Village Zoning Law Art. II, Definitions). And JC Pops' attempted conveyance of the Property to Norfolk Southern would cause JC Pops and its existing parcel and business operations to be in violation of this five- (5) acre minimum requirement.

6. In addition, JC Pops' attempted conveyance would create a "landlocked" property to the rear of JC Pops' parcel—that lacks any road frontage on a public street. This simply is not permitted (without an Area Variance) under the Village's established local laws and regulations. (Subdivision Law, Section 604[2][c]).

7. It is my understanding that JC Pops requested that Norfolk Southern agree to a Maintenance Agreement in connection with the Easement that JC Pops has purported to issue to grant Norfolk Southern access to the Property from the School Road. Norfolk Southern refused,

however; instead agreeing to pay JC Pops an additional one hundred thousand dollars ($100,000.00).

8. It is also my understanding that the Village's minimum lot size requirement for Large Scale Businesses such as JC Pops, and the Village's minimum road frontage requirements for subdivided parcels, are intended to protect the public health and safety.

9. Neither of the requirements are permitting or "preclearance" requirements; and both are generally applicable and can be obeyed with reasonable certainty.

10. Similarly, I note that as a matter of law I am not permitted to issue either a Building Permit or a Certificate of Occupancy for a property within the Village without approval from the County of Albany Department of Health for the property's wastewater treatment system.

11. I am also precluded from issuing a Building Permit or a Certificate of Occupancy for the development of property that does not have an approved water source meeting the standards of the New York State Department of Health.

12. In this instance, there is not any public water main that services the Property in question. JC Pops' source of water is limited to a private well—that cannot be used as a potable water source or by other properties. And no public water main extends beyond Norfolk Southern's tracks to the Property that Norfolk Southern has purported to acquire.

13. It is my understanding that Albany County has not authorized any extension of the Village's public water system (by way of an extension of its water mains); and a "water service" lateral to the Property from the nearest water main (which would require boring under two public roads and Norfolk Southern's own railroad tracks) would be inconsistent with well settled, generally applicable standards for public water systems in the State of New York. (See, 10 NYCRR 5-1.22).

14. It is also my understanding that these express standards for a public water system are intended to protect not just the property that is receiving public water—but the Village's public water system as a whole.

15. Ordinarily, an applicant for a subdivision or Site Plan / Special Use Permit approval would secure Albany County Department of Health as part of its review process. In this instance, however, because JC Pops has attempted to circumvent review and approval by the Village, no such approvals have been obtained.

16. As reflected in Norfolk Southern's motion papers, on or about September 10, 2025, I issued a Stop Work Order in connection with unauthorized construction on the Property—in accordance with 19 NYCRR 1203.3(c).

17. Subsequently, on that same date, Norfolk Southern wrote to the Village—for the first time—concerning Norfolk Southern's intent to construct a crew-change facility on the Property.

18. Norfolk Southern representatives have suggested that my Stop Work Order was a response to their September 10, 2025 correspondence. To the contrary, however, it appears that their communication to the Village was a response to the Village's efforts to stop the illegal construction activities that were taking place on the site (which clearly has not been properly subdivided from JC Pops parcel).

19. Thereafter, I and several other Village representatives met with a representative of Norfolk Southern. In addition, we participated in a video conference—during which Norfolk Southern presented the materials attached as **Exhibit A**.

20. Those materials identify two (2) other locations—further to the west of the Village—that Norfolk Southern has already identified as alternative locations for its crew change

operations. Specifically, the locations between Bozie Hollow Road and Western Avenue in the Town of Guilderland; and Cole Road and the Schoharie Turnpike in the Town of Duanesburg. The location in Duanesburg is immediately adjacent to Norfolk Southern's main line—where the spur to Voorheesville splits off.

21. Norfolk Southern's representatives noted that the distance between the proposed crew change facility and Hennessey Road to the west of the Village was less than 1.5 miles. As a result, Norfolk Southern's representatives claimed that Norfolk Southern was already planning to construct crew change pads at one or both of these locations farther to the west—where Norfolk Southern would stop its trains once it began running the 1.7 mile long trains that Norfolk Southern requested permission from the STB to run.

22. Because there have never been sleeping quarters planned for their crew change facility, Norfolk Southern representatives stated that they would simply use the same "train taxis"—that Norfolk Southern will already have in place to bring personnel to and from local hotels—to bring crew to, and retrieve crew from, the alternate crew change locations.

23. To date, I have not lifted the Stop Work Order. No development has been approved for the Property in question. And without approval of any wastewater treatment system and public water service from Albany County I am not in a position to issue a Building Permit or Certificate of Occupancy.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 12, 2025.

_____
Steven Mason